Adam B. Nach – 013622
Allison M. Lauritson - 022185
**LANE & NACH, P.C.**
2025 North Third Street, Suite 157
Phoenix, AZ 85004
Telephone Number: (602) 258-6000
Email: adam.nach@lane-nach.com
Email: allison.lauritson@lane-nach.com

Attorneys for Jill H. Ford

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | (Chapter 7 Case) |
| RICHARD ALLEN AND SONDRA JANE CAMPBELL | No. 2-07-bk-04683-RTB |
| | *Adversary No.2:08-ap-00861-RTB* |
| Debtors. | |
| Jill H. Ford, TRUSTEE, | **PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff, | |
| vs. | **AND** |
| PETER STROJNIK and TANYA STROJNIK, husband and wife, TCMS INVESTMENTS, INC, an Arizona corporation | **PLAINTIFF'S RESPONSE TO CROSS MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Jill H. Ford, Chapter 7 Trustee and Plaintiff, by and through her attorneys undersigned, hereby Replies to Defendants' Response to Plaintiff's Motion for Partial Summary Judgment ("Reply") and Responds to Cross Motion for Summary Judgment ("Response"). In support of Plaintiff's Reply & Response, Plaintiff respectfully represents as follows:

**I.      Relevant Facts - Not in Dispute**

Defendant Peter Strojnik ("Defendant Peter") at all relevant times was married to Defendant Tanya Strojnik ("Defendant Tanya"). See Plaintiff's Separate Statement of Facts ("SOF") at ¶ 4;

Defendants' Separate Statement of Facts ("DSOF") at ¶ 1.

At all relevant times Defendant Tanya was the sole owner of Defendant TCMS. *See* DSOF at ¶ 1.

Debtors had an interest in Arizona Precious Metals ("APM") which was incorporated on August 14, 2006. *See* SOF at ¶ 8; DSOF at ¶ 6.

Defendant Peter Strojnik became a director of APM on or about August 20, 2006. *See* DSOF at ¶ 7.

Debtors took out a second loan against their residence in the amount of approximately $107,000.00. SOF at ¶ 11. Debtors transferred not less than $98,796.00 on their behalf for the purpose of purchasing a reclamation bond. *See* DSOF at ¶ 25.

Debtors agreed to contribute $10,000.00 on Dr. Hüning's behalf for his investment for the purpose of purchasing a reclamation bond. *See* Exhibit E to SOF at ¶ 14. The terms of this agreement are set forth in the Assignment of Funding Group Interest and Rights Arising Out of the Funding Group Agreement Dated 11-27-96 ("Assignment"). *See* Exhibit E to SOF at ¶ 14.

The reclamation bond was purchased using the funds invested by Debtors. *See* DSOF at ¶ 27.

The Debtors transferred their interest in APM in October 23, 2006 to Defendant Peter, who at the time was a director of APM, in exchange for payment of attorneys' fees owed in the amount of $10,000.00. *See* DSOF at ¶¶ 7 and 15. At the time of the transfer of Debtor's interest they were represented by Defendant Peter. *See* SOF at ¶¶ 6 and 7; DSOF at ¶ 3.

On or about May 30, 2006, Debtors executed an hourly fee agreement ("Hourly Fee Agreement") with Defendant Peter for services including the investigation of claims against Debtor by the Arizona Corporation Commission ("ACC Claim"). *See* SOF at ¶ 6; DSOF at ¶ 3.

On or about June 22, 2006, Debtors executed a contingency fee agreement ("Contingency Fee Agreement") with Defendant Peter for services related to Debtors' lawsuit filed against Agra-Technologies, Inc. ("AGRA Claim"), CV2006-009755. *See* SOF at ¶ 7; DSOF at ¶ 3.

Pursuant to Modification of Fee Agreements dated December 12, 2006, Debtors were relieved of their obligation to pay outstanding attorneys' fees to Defendant Peter. *See* SOF at ¶¶ 19 and 21; DSOF at ¶ 31.

Pursuant to Defendant Peter's invoices for services provided on the ACC Claim ("ACC Invoices"), the Debtors owed Defendant Peter not less than $20,440.00 at the time of the Modification of Fee Agreements. *See* Exhibit 16 to DSOF.

Defendant Peter failed to include the invoices for the AGRA Claim for the period of June 22, 2006 to December 12, 2006. The invoices ("AGRA Invoices") for this period of time are attached hereto as Exhibit "1". The AGRA Invoices have been redacted to reflect only the hours billed on the AGRA Claim.

Pursuant to the AGRA Invoices, Debtors owed Defendant Peter not less than $40,986.00, calculated at his hourly rate as set forth on the invoices, for time incurred on the AGRA Claim. *See* AGRA Invoices (Exhibit 1).

The total amount owed by Debtors to Defendant Peter upon execution of the Modification of Fee Agreements was $61,426.00. *See* Exhibit 1 and DSOF Exhibit 16. This amount is more than the amount initially alleged to be owed under 11 U.S.C. §547 and is calculated after further review of the AGRA and ACC Invoices. *See* Exhibit 1 and DSOF Exhibit 16.

Defendant Peter is not listed as a creditor on the Schedules of Assets and Liabilities, as amended which means that Debtors believed they did not owe Defendant Peter anything as of the petition. *See* SOF at ¶ 24 and Exhibit H, attached thereto.

Defendant Peter was a director of APM beginning on August 20, 2006. *See* DSOF at ¶ 7.

Debtor was a shareholder of APM until he transferred his stock to Defendant Peter on October 23, 2006. *See* DSOF at ¶ 7.

Defendant Peter and Debtors were both insiders of APM during the period of August 20, 2006 to October 23, 2006. *See* DSOF at ¶¶ 7 and 19.

The Plaintiff alleges that Debtors were relieved of the obligation of paying attorney's fees to Defendant Peter in the total amount of $71,426.00 which includes the amount owed and billed at the time of the Modification of Fee Agreements of $61,426.00 and the sum of $10,000.00 which was released in October, 2006 in exchange for Debtor's stock in APM.

The amount billed for services provided after the Modification of Fee Agreements does not exceed the amount due prior to the modified agreement for services provided. Pursuant to Defendant Peter's records, the amount billed for services provided after December 12, 2006 equaled not less than $32,882.50. *See* DSOF at ¶ 42.

The facts that are not in dispute clearly prove that Debtors were released of their obligation to pay attorneys' fees to Defendant Peter in exchange for the transfer of funds to purchase the reclamation bond and the transfer of their interest in APM to Defendant Peter.

The facts also clearly evidence that Defendant Peter is an insider of Debtor by virtue of each party's interest in APM; either as a shareholder or a director. As set forth in Plaintiff's Motion for Partial Summary Judgment, an affiliate of an insider is considered an insider for purposes of 11 U.S.C. §547. *See* 11 U.S.C. §101(31)(E); In re Lull, 2009 WL 3853210 (Bankr.D.Hawaii) (*An affiliate includes "insiders of insiders."*) *citing* In re Enter, Acquisition Partners, Inc., 319 B.R. 626, 632 (B.A.P. 9th Cir. 2004).

## II.     Irrelevant Facts - Allegedly in Dispute

Defendants respond to Plaintiff's Motion for Partial Summary Judgment ("Motion") by alleging several facts to confuse the issues and to create a factual dispute. The facts regarding the claim arising under 11 U.S.C. §547 that are allegedly in dispute are actually agreed upon or are not relevant to Plaintiff's Motion. Such alleged, disputed facts are voluminous and include the following:

**A.     <u>Debtors' 2004 Examination Testimony Differs from Debtor's Declaration Provided by Defendant Peter</u>**: Defendant Peter provides an Affidavit signed by Debtor which attempts to contradict the 2004 examination testimony, which was given by Debtor under oath. The distinctions between the Debtors' 2004 examination testimony and the subsequent Declaration provided by Defendant Peter is not enough to create a genuine issue of material fact for the purpose of defeating the Plaintiff's Motion. The distinctions include: (a) whom Debtors paid the funds to in order to purchase the reclamation bond; and (b) the amount of funds transferred for the purchase of the reclamation bond.

1.     Defendants contend that the funds were transferred to the U.S. Forest Service instead of directly to APM. Regardless of who received the actual money, the underlying purpose of transferring the funds was to purchase a reclamation bond for the benefit of APM. Defendant Peter, as a director of APM, benefitted from the transfer. Debtors had previously transferred their stock interest in APM to Defendant Peter and as a result Defendant Peter would stand to benefit as an investor in APM from its mining operations, which would be possible due to the purchase of the reclamation bond. In exchange for the transfer, Debtors were relieved of their obligation to pay outstanding attorneys' fees to Defendant Peter.

2.     The amount transferred differs in the Plaintiff's Statement of Facts and the Defendant's Statement of Facts by approximately $10,000.00. This discrepancy is explained by looking at the Assignment which sets forth that the Debtors were to pay $10,000.00 on behalf of Dr.

Hüning. Thus, the amount in dispute is not actually in dispute *See* Exhibit E to SOF at ¶ 14; DSOF at ¶ 25.

**B.** **<u>Attorney's Fees Owed at Time of Modification to Fee Agreements:</u>** The Modification to Fee Agreements clearly sets forth that the parties "agree and understand that the Contingency Fee Agreement dated 06-22-06 is no longer viable…" *See* Exhibit F to SOF at ¶ 19. Moreover, because the Contingency Fee Agreement was no longer in effect, as of the date the Modification of Fee Agreements, Debtors "… would become indebted to Attorney at the full hourly rate for the AGRA litigation from the commencement of representation to the conclusion of representation." *See* Exhibit F to SOF at ¶ 19.

Therefore, the fees due on the AGRA Claim were due and owing and were calculated at an hourly rate as of December 12, 2006. The amount due Defendant Peter pursuant to the Modification of Fee Agreements was not less than $40,986.00, pursuant to the AGRA Invoices (Exhibit 1 to this Reply). Moreover, the Debtors owed not less than $20,440.00 to Defendant Peter for services provided on the ACC Claim. *See* Exhibit 16 to DSOF.

The Modification of Fee Agreements specifically states that the Debtors' transferred their interest in exchange for the release of obligation to pay attorneys' fees. *See* SOF at ¶¶ 19 and 21; DSOF at ¶ 31.

The Plaintiff alleges that Debtors were relieved of the obligation to pay attorney's fees to Defendant Peter in the total amount of $71,426.00 which includes the amount owed and billed at the time of the Modification of Fee Agreements of $61,426.00 and the sum of $10,000.00 which was released in October, 2006 in exchange for Debtor's stock in APM. The dispute over the amount owed does not create a genuine issue of material fact because the Modification of Fee Agreements and the invoices clearly evidence the amount Debtors owed as of December 12, 2006.

Case 2:08-ap-00861-RTB    Doc 28    Filed 03/26/10    Entered 03/26/10 14:49:28    Desc
Main Document    Page 6 of 11

**C.     Defendant Peter is an Insider to Debtors:** Defendant Peter admits he was a director of APM as of August 20, 2006. Defendant Peter also admits that as a director of APM, he is an insider of APM. Defendant Peter contends, however, that because he was not a director of APM at the time Debtor was a shareholder, that he is not an insider of Debtor. However, the facts clearly indicate that Defendant Peter was a director of APM when Debtors transferred their stock in APM to him on October 23, 2006. At the time Debtor transferred his interest in APM to Defendant Peter, Defendant Peter was representing Debtors with respect to the ACC Claim and the AGRA Claim.

Debtor was an insider of APM while Defendant Peter was also an insider of APM. As a result, Defendant Peter is an affiliate as defined in 11 U.S.C. §101(31)(E) and is an insider for purposes of 11 U.S.C. §547.

**D.     Debtors were Insolvent** – Defendant Peter contends that the Debtors were not insolvent at the time of the transfer of Debtor's interest in APM on October 23, 2006 or on December 12, 2006 when Debtors were relieved of their obligation to pay attorneys' fees. However, Defendant Peter fails to provide evidence that Debtors owned assets that were not listed on the Schedules of Assets and Liabilities. Moreover, it is clear that at the time of the transfer, Debtors were defending allegations of the ACC Claim which claim exceeded $12 million. Although the Consent Order had not yet been entered, Debtors were defending the lawsuit and were unable to pay their obligations at the time, including attorneys' fees.

Defendants agree in Defendants' Separate Statement of Facts at ¶ 15, that Debtors could no longer afford to pay legal fees. Debtors were clearly insolvent at the time of the initial transfer in on October 23, 2006, as well as at the time of the transfer on December 12, 2006 when they executed the Modification of Fee Agreements. Pursuant to 11 U.S.C. §101(32) insolvent means "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation,

exclusive of ..." property that may be exempted and property that has been fraudulently concealed or transferred. 11 U.S.C. § 101(32). Thus, under this "balance sheet" test a debtor is insolvent when its liabilities exceed its assets.

Based on the Debtors' Bankruptcy Schedules which indicate that Debtors' liabilities greatly exceeded their assets, and based on the fact that their assets and liabilities did not change from October 2006 to the petition date, Plaintiff has established insolvency. Defendants have not presented any evidence showing that the Debtors were solvent during the one year period preceding the filing of the bankruptcy petition.

### III.  The Defendants Cannot Meet their Burden under 11 U.S.C. § 547(c).

Defendants seek summary judgment on the basis of its affirmative defenses under § 547(c)(1) and (c)(2). The defendant in a preferential transfer proceeding has the burden of proving any exceptions to avoidance under §547(c). 11 U.S.C. §547(g). Defendant Peter contends that the Trustee cannot avoid the transfers because the transfers were a contemporaneous exchange for new value and because the release of obligations occurred in the ordinary course of business.

#### 1.  **The Transfers were on Account of an Antecedent Debt to a Creditor**

A prior debt that is reduced or discharged due to a payment that was made within one year of bankruptcy qualifies as an antecedent debt for the purposes of § 547(b)(2). *See* In re Rodriquez, 209 B.R. 424, 432 (Bankr.S.D.Tex 1997).

As the supporting evidence makes clear, the transfers received by Defendant Peter were in satisfaction of charges incurred on and prior to October 23, 2006 and December 12, 2006, respectively. As such, the transfers of Debtors' funds and interest in APM were made on account of an antecedent debt to a creditor of the Debtors.

## 2. The Transfers were Not a Contemporaneous Exchange for Services

Defendants contend that the transfers at issue cannot be avoided because it was a contemporaneous exchange for new value within the meaning of § 547(c)(1). Section 547(c)(1) provides:

> The trustee may not avoid under this section a transfer—
> (1) to the extent that such transfer was—
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>
> (B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1).

For purposes of this section, "new value" means "money or money's worth in goods, services, or new credit." 11 U.S.C. § 547(a)(2).

Defendants are not entitled to summary judgment on this defense. The statute specifies that a transfer must be a substantially contemporaneous exchange for new value given to the debtor. Defendants have submitted no admissible evidence to support a finding that any services were provided to the Debtors by Defendant Peter at the time the subject transfers were made. Defendant Peter provided invoices as evidence that he provided services to Debtors after December 12, 2006. *See* DSOF at ¶ 42 and related Exhibits. However, not all of the services provided are "substantially contemporaneous" with the Modification of Fee Agreements.

Even if the Court finds that the transfers were a contemporaneous exchange for new value, the new value provided is offset against the amount of the preferential transfer. *See* In re IRFM, Inc., 52 F.3d 228 (9th Cir. 1995). The method applied by the Ninth Circuit provides that subsequent advances of new value may be used to offset prior preferences. Id. In this case, the preferential amount exceeds the

amount of services provided after December 12, 2006, by $38,543.50. Thus, even if the Court allows a defense of new value, there remains a preferential transfer in the amount of not less than $38,543.50 that is avoidable by the Trustee.

### 3. **The Payments Were Not Made in the Ordinary Course of Business nor According to Ordinary Business Terms.**

Defendants also argue that the ordinary course of business exception negates the avoidability of the transfers by Plaintiff. To qualify for the ordinary course of business exception, Defendants must prove that the transfers were —

> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business and financial affairs of the debtor and the transferee; and
>
> (C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). *See* In re Grand Chevrolet, Inc., 25 F.3d 728 (9th Cir. 1994) (to qualify for the ordinary course exception, a creditor must prove by a preponderance of the evidence that the debt and its payment are ordinary in relation to past practices between the debtor and the creditor and the payment was ordinary in relation to prevailing business standards.); In re National Lumber and Supply, Inc., 184 B.R. 74 (9th Cir. BAP 1995).

Defendants have not met their burden to prove the release of obligation occurred in the ordinary course of business. Defendants have merely presented the AGRA Invoices and ACC Invoices showing the release of debt in October, 2006 in exchange for stock in APM and the release of attorneys' fees in exchange for the transfer of funds to purchase the reclamation bond. These are two transactions between Debtors and Defendant Peter. The invoices also indicate some payments made by Debtors from the retainer. This is not sufficient evidence to establish that the release of Debtors' obligation to

pay attorneys' fees was done in the ordinary course. No evidence has been provided that these transfers and release of obligations were ordinary in relation to prevailing business standards.

The Cross Motion for Summary Judgment should be denied and the Plaintiff's Motion should be granted because there are no genuine issues of material fact in dispute and the facts support summary judgment in favor of Plaintiff with respect to claims arising under 11 U.S.C. §547. Plaintiff requests the Court grant Plaintiff's Motion for Partial Summary Judgment and deny Defendants' Cross Motion.

DATED this 26th day of March, 2010.

LANE & NACH, P.C.

By: */s/ Allison M. Lauritson – 022185*
Adam B. Nach
Allison M. Lauritson
Attorneys for Jill H. Ford, Plaintiff

COPY of the foregoing
mailed this 26th day of March, 2010:

Peter Strojnik
3030 North Central Avenue, #1401
Phoenix, AZ 85012

Tanya C. Strojnik
145 W. Glendale Avenue
Phoenix, AZ 85021

TCMS Investments, Inc.
c/o Peter Strojnik
3030 North Central Avenue, #1401
Phoenix, AZ 85012

By: */s/ Corliss A. Kitchens*
Corliss A. Kitchens